**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**
**CASE NO. 5:26-CV-00003-M-RN**

MATT M. and R.M.,

       Plaintiffs,

   v.

UNITED HEALTHCARE SERVICES, INC.,
UNITED BEHAVIORAL HEALTH, COCA-
COLA CONSOLIDATED INC., and the
COCA-COLA CONSOLIDATED INC.
WELFARE BENEFIT PLAN,

       Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF NATURE OF MATTER BEFORE THE COURT ............................. 1

II.   STATEMENT OF FACTS ................................................................................. 2

    A.    Blue Ridge Claims ........................................................................... 2

    B.    Kaizen Claims ................................................................................. 3

    C.    The Plan ........................................................................................... 4

III.  ARGUMENT .................................................................................................. 7

    A.    Standard of Review ......................................................................... 7

    B.    Plaintiffs' First Amended Complaint Cannot Survive Under Fed. R. Civ. P. 12(b)(6). .................................................................................... 8

        i.    In Count I, Plaintiffs Fail to Plausibly Allege an Entitlement to Benefits Under ERISA .......................................................... 8

        ii.   Plaintiffs' Second Cause Of Action Under § 1132(a)(3) Fails As A Matter Of Law. .................................................... 12

            1.    In Count II, Plaintiffs Seek Individualized Monetary Relief; Plaintiffs' ERISA Breach Of Fiduciary Duty Claim Premised on a Purported Violation of the Parity Act Should be Dismissed for that Reason Alone. ......................................... 12

            2.    Plaintiffs Fail to Plausibly Allege a Parity Act Violation. ............ 15

            3.    Plaintiffs' Compliance Analysis Allegations are Inapplicable .................................................................. 18

        iii.  The Court Should Exercise Its Discretion To Deny Plaintiffs' Third Cause Of Action For Statutory Penalties. .............................. 20

        iv.   Plaintiffs' Demand for Attorneys' Fees and Costs Should be Stricken or Dismissed. .......................................................... 22

IV.   CONCLUSION ............................................................................................. 22

i

**Page(s)**

**Cases**

*ACA Fin. Guar. Corp. v. City of Buena Vista*,
917 F.3d 206 (4th Cir. 2019) ........................................................................................ 17

*Aguilar v. Coast to Coast Comput. Prods., Inc.*,
No. 2:23-cv-03996-MCS-E, 2024 WL 4040466 (C.D. Cal. Aug. 7, 2024) ........................... 9

*Albert S. v. Blue Cross & Blue Shield of N.C.*,
No. 1:22-cv-235-MOC-WCM, 2023 WL 3111768 (W.D.N.C. Apr. 26, 2023) .................... 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................... 7

*B.H. v. Anthem Health Plans of Va., Inc.*,
No. 3:22-CV-00600-RCY, 2023 WL 5270658 (E.D. Va. July 27, 2023) .......................... 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................... 7, 11

*Collins v. Pension & Ins. Comm. of S. Cal. Rock Prods. & Ready Mixed Concrete Ass'ns*,
144 F.3d 1279 (9th Cir. 1998) (*per curiam*) ......................................................... 10

*David B. v. Blue Cross Blue Shield of N.C.*,
No. 1:24CV896, 2025 WL 2784309 (M.D.N.C. Sept. 30, 2025) ...................................... 14

*Duncan v. Jack Henry & Assocs., Inc.*,
617 F. Supp. 3d 1011 (W.D. Mo. 2022) ................................................................. 19, 20

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014) ................................................................................................ 7, 8

*Flores v. Life Ins. Co. of N. Am.*,
770 F. Supp. 2d 768 (D. Md. 2011) ............................................................................ 20

*H.H. v. Aetna Ins. Co.*,
342 F. Supp. 3d 1311 (S.D. Fla. 2018) ......................................................................... 8

*Henry v. Champlain Enters., Inc.*,
445 F.3d 610 (2d Cir. 2006) ..................................................................................... 11

*Hiney Printing Co. v. Brantner*,
243 F.3d 956 (6th Cir. 2001) .................................................................................... 21

*James C. v. Anthem Blue Cross & Blue Shield*,
No. 19-38, 2021 WL 2532905 (D. Utah June 21, 2021)......................................................... 15

*Kazda v. Aetna Life Ins. Co.*,
No. 19-cv-02512-WHO, 2019 WL 11769104 (N.D. Cal. Sept. 11, 2019) ........................... 11

*Kerkhof v. MCI WorldCom, Inc.*,
282 F.3d 44 (1st Cir. 2002) ................................................................................................... 21

*Kirsten W. v. Cal. Physicians' Serv.*,
No. 2:19-cv-00710-DBB-JCB, 2021 WL 83264 (D. Utah Jan. 11, 2021) ........................... 16

*Korotynska v. Metro. Life Ins. Co.*,
474 F.3d 101 (4th Cir. 2006) ................................................................................................ 12

*L.L. v. Medcost Benefit Servs.*,
No. 1:21-CV-00265-MR, 2023 WL 362391 (W.D.N.C. Jan. 23, 2023) .............................. 14

*LB Surgery Ctr., LLC v. United Parcel Serv. of Am., Inc.*,
No. 17 C 3073, 2017 WL 5462180 (N.D. Ill. Nov. 14, 2017).................................................. 8

*Loftus v. F.D.I.C.*,
989 F. Supp. 2d 483 (D.S.C. 2013)......................................................................................... 2

*Mark C. v. United Healthcare Ins. Co.*,
No. 2:20-cv-00012-DBB, 2021 WL 288578 (D. Utah Jan. 28, 2021) ................................. 16

*McDonough v. Aetna Life Ins. Co.*,
783 F.3d 374 (1st Cir. 2015).................................................................................................. 21

*Michael M. v. Nexsen Pruet Grp. Med. & Dental Plan*,
No. 3:18-cv-00873, 2021 WL 1026383 (D.S.C. Mar. 17, 2021).......................................... 16

*Michele T. v. United Healthcare Oxford*,
No. 2:19-cv-507-TC, 2020 WL 4596961 (D. Utah Aug. 11, 2020)...................................... 17

*N.E. v. Blue Cross Blue Shield of N.C.*,
No. 1:21CV684, 2023 WL 2696834 (M.D.N.C. Feb. 24, 2023), *report and
recommendation adopted*, 2023 WL 2692414 (M.D.N.C. Mar. 29, 2023) ......................... 20

*Paragon Off. Servs., LLC v. UnitedHealthcare Ins. Co., Inc.*,
No. 3:11–CV–2205–D, 2012 WL 5868249 (N.D. Tex. Nov. 20, 2012).............................. 11

*R.P. & M.P. v. BlueCross BlueShield of N.C.*,
No. 5:22-CV-295-BO-RJ, 2023 WL 4242746 (E.D.N.C. June 28, 2023)........................... 14

*Reiten v. Blue Cross of Cal.*,
No. 2:19-cv-05274-AB-AFMx, 2020 WL 1032371 (C.D. Cal. Jan. 23, 2020) ................... 11

*Robinson v. Anthem Blue Cross Life and Health Ins. Co.*,
 No. CV 17-4600 (FLW), 2018 WL 6258881 (D.N.J. Nov. 30, 2018) ................................. 9

*Smith v. Cigna Health & Life Ins. Co.*,
 No. 3:20-cv-624-SI, 2020 WL 5834786 (D. Or. Sept. 30, 2020) ....................................... 11

*Smith v. Sydnor*,
 184 F.3d 356 (4th Cir. 1999) ............................................................................................. 12

*T.S. v. Anthem Blue Cross Blue, Shield*,
 No. 1:23-CV-60-MOC, 2023 WL 5004499 (W.D.N.C. Aug. 4, 2023) ............................... 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007) ............................................................................................................ 7

*Thomas v. Hartford Life & Accident Ins. Co.*,
 No. 1:03CV65-C, 2003 WL 22466198 (W.D.N.C. Sept. 3, 2003) ....................................... 2

*William D. v. United HealthCare Ins. Co.*,
 No. 2:19-cv-00590-DBB-JCB, 2020 WL 4747765 (D. Utah Aug. 17, 2020) ..................... 18

*Williams v. Metropolitan Life Ins. Co.*,
 609 F.3d 622 (4th Cir. 2010) ............................................................................................. 22

*Wright v. Or. Metallurgical Corp.*,
 360 F.3d 1090 (9th Cir. 2004) ........................................................................................... 10

**Statutes**

29 U.S.C. § 1001, e*t seq*. ........................................................................................................ 1

29 U.S.C. § 1002(16)(A) ...................................................................................................... 20

29 U.S.C. § 1024(b)(4) ........................................................................................................ 21

29 U.S.C. § 1104(a)(1)(A) .................................................................................................... 11

29 U.S.C. § 1132(a)(1)(B) ................................................................................................. 8, 12

29 U.S.C. § 1132(a)(3) ................................................................................................. 12, 13, 14

29 U.S.C. § 1132(c) .............................................................................................................. 20

29 U.S.C. § 1132(g)(1) ......................................................................................................... 22

29 U.S.C. § 1185a(3)(A)(ii) ................................................................................................. 15

Employee Retirement Income Security Act of 1974 .................................................*passim*

ERISA § 104(b)........................................................................................................... 19

Mental Health Parity and Addiction Equity Act.................................................................*passim*

**Other Authorities**

29 C.F.R. § 2590.712-1(e) ........................................................................................ 19

29 C.F.R. § 2590.712(a)-(c)...................................................................................... 15

29 C.F.R. § 2590.712(c)(2)(ii)(A) ........................................................................... 15

29 C.F.R. § 2590.712(c)(4)(i).................................................................................... 18

45 C.F.R. § 146.136(c)(4)(i).............................................................................. 15, 16

78 Fed. Reg. 68245 .................................................................................................. 16

89 Fed. Reg. 77586-01 ............................................................................................. 19

Fed. R. Civ. P. 8 ....................................................................................................... 18

Fed. R. Civ. P. 12(b)(6) ................................................................................... 1, 2, 7, 8

Defendants UnitedHealthcare Services, Inc. ("UHSI"), United Behavioral Health ("UBH") (collectively, "United"), Coca-Cola Consolidated, Inc. ("Coca-Cola"), and The Coca-Cola Consolidated, Inc. Welfare Benefit Plan ("Coca-Cola Plan") (UHSI, UBH, Coca-Cola, and Coca-Cola Plan (collectively, "Defendants")), respectfully move to dismiss Plaintiffs' Matt M. and R.M. (collectively, "Plaintiffs") First Amended Complaint under Fed. R. Civ. P. 12(b)(6).

## I.      STATEMENT OF NATURE OF MATTER BEFORE THE COURT

Plaintiffs seek benefits under ERISA[1] based on Plaintiff R.M.'s treatment at Blue Ridge Therapeutic Wilderness ("Blue Ridge") and Treatment Solutions Kaizen Academy ("Kaizen"). Even with the opportunity to amend their initial complaint, Plaintiffs continue to fail to plausibly state an ERISA claim for benefits. *First,* Plaintiffs do not plausibly allege that the at-issue services from Blue Ridge were covered, and therefore reimbursable, under the Plan. *Second,* Plaintiffs argue that the Kaizen services should have been reimbursed at a higher rate for R.M.'s treatment. Plaintiffs have not pointed to any Plan terms entitling them to a higher rate, and ignore the fact that by seeking non-emergent treatment from a known out-of-network facility, they took on the additional risk or expense of doing so.

Plaintiffs also fail to state an ERISA breach of fiduciary duty claim premised on an alleged violation of the federal Mental Health Parity and Addiction Equity Act ("Parity Act"). Plaintiffs continue to rely on boilerplate allegations of disparate treatment between mental health and medical/surgical benefits. These conclusory assertions do not satisfy basic pleading standards and are contradicted by the Plan terms.

For all these reasons, Plaintiffs' First Amended Complaint should be dismissed, with prejudice.

---

[1] The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* ("ERISA").

## II. STATEMENT OF FACTS

Plaintiffs allege that the self-funded Plan[2] is governed by ERISA and that at all relevant times, Matt M. was a participant in the Plan and R.M. was a beneficiary of the Plan. (Am. Compl. ¶ 3.) Plaintiffs' First Amended Complaint concerns out-of-network *inpatient* services at Blue Ridge and Kaizen. (*Id.* ¶ 7.) Plaintiffs contend that United "denied claims for payment of R.M.'s medical expenses in connection with his treatment at Blue Ridge and Kaizen." (*Id.* ¶ 8.) In doing so, Plaintiffs fail to allege facts to establish an entitlement to benefits under the Plan.

### A. Blue Ridge Claims

Plaintiffs allege R.M. received medical care and treatment at Blue Ridge from January 16, 2023, to April 13, 2023. (*Id.* ¶ 7.) While at Blue Ridge, psychological testing occurred concurrently. (*Id.* ¶ 17.) In an explanation of benefits ("EOB"), United denied coverage for R.M.'s treatment at Blue Ridge. (*Id.* ¶ 15.) United explained that that 1) the processing code submitted was not eligible for payment and 2) the Plan did not cover the therapy or associated expense. (Balog Decl., Ex. C.) On November 7, 2023, Plaintiffs submitted an appeal for both the inpatient treatment and psychological testing that occurred while at Blue Ridge. (*Id.* ¶ 17.) On December 8, 2023, United upheld the denial and confirmed in part that "the claims for dates of service 01/16/2023 through 04/16/2023 was [sic] appropriately processed as per United Behavioral Health (UBH) guidelines. Claims were denied as services not covered with your coverage." (*Id.* ¶ 34.) On January 26, 2024,

---

[2] "Plan" shall collectively mean the fully-insured health benefits plan sponsored by Coca-Cola Consolidated, Inc. in 2023 and 2024 attached to the Declaration of Janice M. Balog ("Balog Decl.") as Exhibit A and Exhibit B, respectively. In an ERISA case, plan documents referenced in a complaint may be considered on a Fed. R. Civ. P. 12(b)(6) motion. *See Loftus v. F.D.I.C.*, 989 F. Supp. 2d 483, 490–91 (D.S.C. 2013); *Thomas v. Hartford Life & Accident Ins. Co.*, No. 1:03CV65-C, 2003 WL 22466198 at *3 n.1 (W.D.N.C. Sept. 3, 2003) (considering policy in recommendation that Rule 12(b)(6) motion be granted, where the policy was explicitly referred to in the complaint and the plaintiff did not challenge the authenticity of the policy submitted by the defendant).

Plaintiffs submitted a second appeal and on March 8, 2024, United again upheld the denial. (*Id.* ¶¶ 36, 39.) United explained in part, "Per claims research, this claim was appropriately processed and denied. Per your Member's Benefits service, its [sic] an Exclusion Wilderness/Outdoor therapy not covered. No further payment will be issued." (*Id.* ¶ 39.)

### B. Kaizen Claims

Plaintiffs allege R.M. received medical care and treatment at Kaizen from October 30, 2023, to February 16, 2024. (*Id.* ¶ 7.) While at Kaizen, R.M. initially received inpatient services but then later received partial hospitalization and intensive outpatient care. (*Id.* ¶ 42.) United provided a series of EOBs which explained the allowed amounts at each level of care. (Balog Decl., Exs. D, E, F.) On June 3, 2024, Plaintiffs appealed the "low and inconsistent" payments United made for R.M.'s treatment at Kaizen. (Am. Compl. ¶ 44.) In the appeal, Plaintiffs argued the payment rates were unreasonable and not aligned with the maximum allowed provision in the Plan. (*Id.* ¶ 45.) On July 3, 2024, United confirmed benefits from January 26, 2024 through February 16, 2024. (Balog Decl., Ex. G.) United explained, in part,

> "Based on my review of the details of your request, including any supporting documentation which may have been submitted with your appeal letter, I have determined that the submitted claim (s) of service 1/26/2024 through 2/16/2024 have been approved for additional payment. According to my review, claim(s) have been adjusted and reprocessed as per contracted rates."

(*Id.*) On July 3, 2024, United also confirmed that claims for treatment for October 30, 2023 through December 30, 2023 had been correctly processed and no coverage was available. (Am. Compl. ¶ 53.) On July 5, 2024, United confirmed that claims for treatment for January 2, 2024 through January 18, 2024 had been processed correctly and no benefits were due. (*Id.* ¶ 54.)

On August 27, 2024, Plaintiffs submitted a second appeal regarding the alleged discrepancy in payment amounts. (*Id.* ¶ 56.) On November 26, 2024, United explained, in part:

Based on my review of the request, including any supporting documentation which may have been submitted with your appeal letter, I have determined that the submitted claim(s) for date(s) of service 10/30/2023 have been approved for payment. The claim was sent for reprocessing and will be paid according to the benefit. Please refer to the Explanation of Benefits.

However, claims for dates of service 10/31/2023 through 12/30/23 has not been approved for payment. Claims were processed correctly per Member's Out-of-network Benefits which includes Maximum Non-Network Reimbursement Program (MNNRP) repricing when a claim has failed to be repriced by our Out of network (OON) Vendors. Center for Medicare and Medicaid Services (CMS) rates are calculated per our Member's Plan, Facility location and Revenue Code billed. Please see Explanation of Benefits (EOB) for reference to Maximum Non-Network Reimbursement Program (MNNRP) repricing.

(Balog Decl., Ex. H.) On November 26, 2024, United also confirmed that the submitted claims for dates of service January 2, 2023 through January 18, 2024 were approved and would be reprocessed for out-of-network benefits. (Am. Compl. ¶ 62.)

Further, Plaintiffs allege that they requested certain documents from United. As it relates to Blue Ridge, Plaintiffs allege they requested 1) documentation relevant to the Blue Ridge denials including any internal case notes or reports, and 2) an MHPAEA compliance analysis on the Plan and related documentation. (*Id.* ¶¶ 20, 33.) As it relates to Kaizen, Plaintiffs allege they requested 1) clear and detailed documentation describing the methodology used to calculate the claims, 2) documents under which the Plan was operated and 3) "'any procedures, formulas, methodologies, or schedules' utilized to evaluate paid amounts." (*Id.* ¶¶ 48, 51, 57.) Plaintiffs allege on February 19, 2025, they requested documentation from the Plan Administrator and United. (*Id.* ¶ 64.)

### C. The Plan

Coca-Cola is the Plan Sponsor and United HealthCare Services, Inc. is the Claims Administrator. (Balog Decl., Ex. A, p. 1, Ex. B, p. 1.) The Plan Sponsor and the Claims Administrator have the discretion to do the following:

– Interpret Benefits and the other terms, limitations, and exclusions set out in this *SPD*, the *Schedule of Benefits* and any SMMs and/or Amendments.

4

- Make factual determinations relating to the Benefits.

(Balog Decl., Ex. A, p. 5, Ex. B, p. 5.) The Plan defines Covered Health Care Service(s) as:

> health care services, including supplies or Pharmaceutical Products which the Claims Administrator determined to be all of the following:
>
> - Medically Necessary.
> - Described as a Covered Health Care Service in this *SPD* under *Section 1: Covered Health Care Services* and in the *Schedule of Benefits.*
> - Not excluded in this *SPD* under *Section 2: Exclusions and Limitations*.
> - Provided for the purpose of preventing, diagnosing or treating Sickness, Injury, Mental Illness and Substance-Related and Addictive Disorders, or their symptoms.
> - Consistent with nationally recognized scientific evidence as available and prevailing medical standards and clinical guidelines. In applying the above definition, "scientific evidence" and "prevailing medical standards" have the following meanings….
>
> - Not provided for the convenience of the Covered Person, Physician, facility or any other person.
> - Described as a Covered Health Care Service in this *SPD* under *Section 1: Covered Health Care Services* and in the *Schedule of Benefits.*
> - Provided to a Covered Person who meets the Plan's eligibility requirements.
> - Not excluded in this *SPD* under *Section 2: Exclusions and Limitations*.

(Balog Decl., Ex. A, pp. 103-104, Ex. B, pp. 102-103.) Section 2 of the Plan lists Exclusions and Limitations. As relevant here, the Plan expressly excludes Alternative Treatments including wilderness, adventure, camping, outdoor, or other similar programs. (Balog Decl., Ex. A, p. 59, Ex. B, p. 57.) The Plan explains that "When a service is not a Covered Health Care Service, all services related to that non-Covered Health Care Service are also excluded." (Balog Decl., Ex. A, p. 70, Ex. B, p. 68.)

"Allowed Amounts" are the amount the Claims Administrator determines the Plan will pay for covered services and benefits. (Balog Decl., Ex. A, p. 33, Ex. B, p. 33.) The Plan defines "Allowed Amounts":

> for Covered Health Care Services, incurred while the Plan is in effect, Allowed Amounts are determined by the Claims Administrator as required by law as shown in the *Schedule of Benefits.*

5

Allowed Amounts are determined in accordance with the Claims Administrator's reimbursement policy guidelines or as required by law. The Claims Administrator develops these guidelines, in its discretion, after review of all provider billings in accordance with one or more of the following methodologies:

– As shown in the most recent edition of the *Current Procedural Terminology (CPT)*, a publication of the *American Medical Association*, and/or the *Centers for Medicare and Medicaid Services (CMS)*.
– As reported by generally recognized professionals or publications.
– As used for Medicare.
– As determined by the medical staff and outside medical consultants pursuant to other appropriate source or determination that the Claims Administrator accepts.

(Balog Decl., Ex. A, p. 102, Ex. B, p. 101.) The Plan further explains:

When Covered Health Care Services are received from an out-of-Network provider, except as described above, Allowed Amounts are determined, based on one of the following:

– Negotiated rates agreed to by the out-of-Network provider and either the Claims Administrator or one of the Claims Administrator's vendors, affiliates or subcontractors.
– If rates have not been negotiated, then one of the following amounts applies based on the claim type:
    o Allowed Amounts are determined based on 110% of the published rates allowed by the Centers for Medicare and Medicaid Services (CMS) for Medicare for the same or similar service within the geographic market, with the exception of the following:
        ▪ 50% of CMS for the same or similar freestanding laboratory service
        ▪ 45% of CMS for the same or similar Durable Medical Equipment from a freestanding supplier, or CMS competitive bid rates

– When a rate is not published by CMS for the service, the Claims Administrator uses an available gap methodology to determine a rate for the service as follows:
    o For services other than Pharmaceutical Products, the Claims Administrator uses a gap methodology established by OptumInsight and/or a third party vendor that uses a relative value scale or the amount typically accepted by a provider for the same or similar service. The relative value scale may be based on the difficulty, time, work, risk, location and resources of the service. If the relative value scale(s) currently in use become no longer available, the Claims Administrator will use a comparable scale(s). The Claims Administrator and OptumInsight are related companies through common ownership by UnitedHealth Group. Refer to the Claims Administrator's website at www.myuhc.com for information regarding the vendor that provides the applicable gap fill relative value scale information.
    o For Pharmaceutical Products, the Claims Administrator uses gap methodologies that are similar to the pricing methodology used by CMS, and produce fees based on published acquisition costs or average wholesale

6

price for the pharmaceuticals. These methodologies are currently created by RJ Health Systems, Thomson Reuters (published in its Red Book), or UnitedHealthcare based on an internally developed pharmaceutical pricing resource.

o When a rate for a laboratory service is not published by CMS for the service and gap methodology does not apply to the service, the rate is based on the average amount negotiated with similar Network providers for the same or similar service.

o When a rate for all other services is not published by CMS for the service and a gap methodology does not apply to the service, the Allowed Amount is based on 50% of the provider's billed charge.

(Balog Decl., Ex. A, pp. 35-36.)

## III. ARGUMENT

### A. Standard of Review

To withstand a Fed. R. Civ. P. 12(b)(6) motion, a complaint "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Court is generally limited in its review on a motion to dismiss to the facts alleged in the complaint, it may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A complaint that merely alleges a possible or "conceivable" claim is insufficient. *Iqbal*, 556 U.S. at 679–80 (quoting *Twombly*, 550 U.S. at 570).

Although the "plausibility" standard differs from a "probability requirement," it still requires more than a "sheer possibility that a defendant has acted unlawfully." *Id.* at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (internal citation omitted). The Supreme Court has emphasized the importance and applicability of the federal pleading standard in ERISA actions and encouraged courts to apply scrutiny at the pleading stage to "divide the plausible sheep from the meritless goats." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409,

425 (2014). This "important task" should be accomplished by a "careful, context-sensitive scrutiny of a complaint's allegations." *Id*.

> **B.** **Plaintiffs' First Amended Complaint Cannot Survive Under Fed. R. Civ. P. 12(b)(6)**
>
> > **i.** **In Count I, Plaintiffs Fail to Plausibly Allege an Entitlement to Benefits Under ERISA**

Plaintiffs' first cause of action under ERISA § 502(a)(1)(B) must be dismissed because there are no allegations to support a plausible entitlement to the benefits Plaintiffs seek. ERISA § 502(a)(1)(B) authorizes a suit by an ERISA plan participant or beneficiary "to recover benefits *due to him* under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (emphasis added). To state a plausible claim, a plaintiff must allege sufficient facts to allow the court to reasonably infer that the terms of the plan require benefits to be paid. *See H.H. v. Aetna Ins. Co.*, 342 F. Supp. 3d 1311, 1316 (S.D. Fla. 2018) ("A plaintiff must identify a specific term of the plan that covers the services at issue and must provide facts sufficient to show that the services meet whatever requirements the plan imposes for coverage."); *LB Surgery Ctr., LLC v. United Parcel Serv. of Am., Inc.*, No. 17 C 3073, 2017 WL 5462180, at *2 (N.D. Ill. Nov. 14, 2017) ("Failure to specify the allegedly breached plan term is grounds for dismissal.").

For the Blue Ridge Claim, United denied the non-emergent inpatient services because the Plan expressly excludes Alternative Treatments, including "wilderness, adventure, camping, outdoor, or other similar programs." (Balog Decl., Ex. A, p. 59, Ex. B, p. 57.) The Plan explains that "[w]hen a service is not a Covered Health Care Service, all services related to that non-Covered Health Care Service are also excluded." (Balog Decl., Ex. A, p. 70, Ex. B, p. 68.) Here, the inpatient treatment at Blue Ridge was therefore not a Covered Health Care Service. The same plainly worded Plan exclusion applies to the psychological testing, which also took place at Blue

8

Ridge. The psychological testing clearly relates to the non-covered services at Blue Ridge, and is therefore excluded under the Plan.

The Plan requires that there be a "Covered Health Care Service" to trigger benefits. Plaintiffs do not plausibly allege how the at-issue services meet that definition of Covered Health Care Service, which is necessary to allege a plausible claim for benefits. *See Aguilar v. Coast to Coast Comput. Prods., Inc.*, No. 2:23-cv-03996-MCS-E, 2024 WL 4040466, at *4 (C.D. Cal. Aug. 7, 2024) (finding no duty to negotiate under the plan terms at motion to dismiss stage; finding plaintiffs failed to plead a plausible claim; finding leave to amend inappropriate); *Robinson v. Anthem Blue Cross Life and Health Ins. Co.*, No. CV 17-4600 (FLW), 2018 WL 6258881, at *4 (D.N.J. Nov. 30, 2018) (dismissing ERISA claim where the plaintiff did not allege that the reimbursement fell below the "maximum allowed" rate for out-of-network services under the plan or how the "[d]efendants acted in contravention of the procedures for determining out-of-network benefits."). Plaintiffs fail to identify any Plan term establishing that the disputed out-of-network, non-emergency inpatient services were Covered Health Care Services under the Plan.

For the Kaizen Claim, Plaintiffs argue that United paid unreasonably low rates that were not aligned with the "maximum allowed amount provision" in the Plan and that United failed to explain what methodology was used to calculate the allowed amounts. (Am. Compl. ¶¶ 45, 47.) To support their argument, Plaintiffs point to the Plan's conditional out-of-network reimbursement methodology regarding how "Allowed Amounts" are determined when Covered Health Care Services are received from an out-of-network facilities. (*Id.* ¶ 46.) But Plaintiffs fail to explain how this section of the Plan supports their argument that United paid "unreasonably low rates" or that Plaintiffs are entitled to any benefits above the Plan's reimbursement methodology and other than what was reimbursed. Plaintiff fails to refer to any specific provision within the Plan that was

plausibly violated or that warrants additional out-of-network benefits. That is because the Plan's conditional out-of-network reimbursement methodology does not require United to pay "maximum amounts," and United, in its discretion, reimbursed Plaintiff in accordance with the Plan's language, which is all that United was required to do. Per the Plan,

> Allowed Amounts are determined in accordance with the Claims Administrator's reimbursement policy guidelines or as required by law. The Claims Administrator develops these guidelines, in its discretion, after review of all provider billings in accordance with one or more of the following methodologies:
>
> – As shown in the most recent edition of the *Current Procedural Terminology (CPT)*, a publication of the *American Medical Association*, and/or the *Centers for Medicare and Medicaid Services (CMS)*.
> – As reported by generally recognized professionals or publications.
> – As used for Medicare.
> – As determined by the medical staff and outside medical consultants pursuant to other appropriate source or determination that the Claims Administrator accepts.

(Balog Decl., Ex. A, p. 102, Ex. B, p. 101.) Here, United determined the Allowed Amounts per the Plan and communicated those allowed amounts to Plaintiffs. United meaningfully responded to Plaintiffs' appeals, made adjustments where needed and explained the rationale of the relevant Allowed Amounts both in denial letters and EOBs.

Plaintiffs' ERISA claim as it relates to Kaizen also fails because "ERISA does no more than protect the benefits which are due to an employee under a plan." *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004) (quoting *Bennett v. Conrail Matched Sav. Plan Admin. Comm.*, 168 F.3d 671, 677 (3d Cir. 1999)). The duty to act in accordance with the plan document "does not . . . require a fiduciary to resolve every issue of interpretation in favor of plan beneficiaries." *Collins v. Pension & Ins. Comm. of S. Cal. Rock Prods. & Ready Mixed Concrete Ass'ns*, 144 F.3d 1279, 1282 (9th Cir. 1998) (*per curiam*) (citing *O'Neil v. Ret. Plan for Salaried Emps. of RKO Gen., Inc.*, 37 F.3d 55, 61 (2d Cir. 1994)).

Further, Plaintiffs' requested relief related to Kaizen would result in an inappropriate windfall. ERISA mandates the distribution of benefits for the "exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). "The aim of ERISA is to make the plaintiffs whole, but not to give them a windfall." *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 624 (2d Cir. 2006). (internal quotations and citations omitted). That aim is clearly violated if funds are awarded to a participant for a purpose not allowed in the plan: mandating payment above what was reimbursed and/or requiring the reimbursement of benefits above what is provided to Plaintiffs under the Plan. Granting Plaintiffs this relief is at odds with the purpose of ERISA.

For *both* Blue Ridge and Kaizen, Plaintiffs' conclusory allegations cannot alter the plain language of the Plan; Plaintiffs have not—and cannot—meet their burden of demonstrating a possible violation of Plan terms that would warrant benefits (or additional benefits in the case of Kaizen) for the at-issue claims. *See, e.g., Smith v. Cigna Health & Life Ins. Co.*, No. 3:20-cv-624-SI, 2020 WL 5834786, at *5 (D. Or. Sept. 30, 2020) (granting motion to dismiss where the plaintiff "offer[ed] only conclusory allegations that [defendant-insurer] has denied 'benefits due to [plaintiff] under the plan.'"); *Paragon Off. Servs., LLC v. UnitedHealthcare Ins. Co., Inc.*, No. 3:11–CV–2205–D, 2012 WL 5868249, at *2-4 (N.D. Tex. Nov. 20, 2012) (dismissing claim for recovery under ERISA § 502(a)(1)(B) for failing to plead enough facts to state a claim as required by *Twombly*); *Kazda v. Aetna Life Ins. Co.*, No. 19-cv-02512-WHO, 2019 WL 11769104, at *4 (N.D. Cal. Sept. 11, 2019) (dismissing ERISA § 502(a)(1)(B) claim where the plaintiff "insufficiently pleaded the existence of an ERISA plan, and did not include specific provisions of her plan that she purports conflict" with the defendant-insurers' determinations); *Reiten v. Blue Cross of Cal.*, No. 2:19-cv-05274-AB-AFMx, 2020 WL 1032371, at *2 (C.D. Cal. Jan. 23, 2020)

11

(granting motion to dismiss because "Plaintiff has failed to identify a specific plan term that confers the benefit in question with respect to each of the identified ERISA patients").

        **ii.    Plaintiffs' Second Cause Of Action Under § 1132(a)(3) Fails As A Matter Of Law.**

        **1.    In Count II, Plaintiffs Seek Individualized Monetary Relief; Plaintiffs' ERISA Breach Of Fiduciary Duty Claim Premised on a Purported Violation of the Parity Act Should be Dismissed for that Reason Alone.**

The Fourth Circuit has explained that "[i]ndividualized equitable relief under § 1132(a)(3) is normally appropriate only for injuries that do not find adequate redress in ERISA's other provisions." *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 102 (4th Cir. 2006) (citing *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996)). Where "adequate relief is available for the plaintiff's injury through review of [his] individual benefits claim under § 1132(a)(1)(B), relief under § 1132(a)(3) will not lie." *Id.* at 102–03. "[A] claim for breach of fiduciary duty is actually a claim for benefits where the resolution of the claim rests upon an interpretation and application of an ERISA-regulated plan rather than upon an interpretation and application of [] ERISA[.]" *Smith v. Sydnor*, 184 F.3d 356, 362 (4th Cir. 1999).

Plaintiffs' second cause of action fails as a threshold matter because Plaintiffs' First Amended Complaint, at its core, only seeks additional benefits (monetary relief) for individualized claims, which is available under ERISA § 1132(a)(1)(B). Indeed, the following allegations apply to both ERISA causes of action:

| First Cause of Action - ERISA § 502(a)(1)(B) | Second Cause of Action – ERISA § 1132(a)(3) |
| --- | --- |
| Paragraph 69 – "United and the Plan failed to provide coverage for R.M.'s treatment in violation of the express terms of the Plan, which promise benefits to employees and their | Paragraph 97 – "The violations of MHPAEA by United and the Plan are breaches of fiduciary duty and give the Plaintiffs the right to obtain appropriate equitable remedies as provided |

12

| | |
|---|---|
| dependents for medically necessary treatment of mental health and substance use disorders."<br><br>Paragraph 78 – "The actions of United and the Plan in failing to provide coverage for R.M.'s medically necessary treatment are a violation of the terms of the Plan and its facility eligibility criteria." | under 29 U.S.C. §1132(a)(3) including, but not limited to:<br><br>[…]<br><br>(f) An order based on the equitable remedy of surcharge requiring the Defendants to provide payment to the Plaintiffs as make-whole relief for their loss;<br><br>(g) An order equitably estopping the Defendants from denying the Plaintiff's claims in violation of MHPAEA; and<br><br>(h) An order providing restitution from the Defendants to the Plaintiffs for their loss arising out of the Defendants' violation of MHPAEA." |
| Prayer for Relief for both causes of action:<br><br>1. Judgment in the total amount that is owed for R.M.'s medically necessary treatment at Blue Ridge (along with compensation for the testing he received there) and Kaizen under the terms of the Plan, plus pre and post-judgment interest to the date of payment;<br>2. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in Plaintiffs' Second Cause of Action;<br>3. For an award of statutory penalties of up to $110 a day against the Plan Administrator after the first 30 days for each instance of the Plan Administrator and its agent United's failure or refusal to fulfill their duties, to provide the Plaintiffs with the documents they had requested;<br>4. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and<br>5. For such further relief as the Court deems just and proper. | Prayer for Relief for both causes of action:<br><br>1. Judgment in the total amount that is owed for R.M.'s medically necessary treatment at Blue Ridge (along with compensation for the testing he received there) and Kaizen under the terms of the Plan, plus pre and post-judgment interest to the date of payment;<br>2. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in Plaintiffs' Second Cause of Action;<br>3. For an award of statutory penalties of up to $110 a day against the Plan Administrator after the first 30 days for each instance of the Plan Administrator and its agent United's failure or refusal to fulfill their duties, to provide the Plaintiffs with the documents they had requested;<br>4. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and<br>5. For such further relief as the Court deems just and proper. |

13

The "equitable" relief set forth in the chart above shows that Plaintiffs seek an order "requiring the Defendants to provide payment to the Plaintiffs as make-whole relief for their loss," "[a]n order equitably estopping the Defendant from denying the Plaintiffs' claims," and "[a]n order providing restitution from the Defendant to the Plaintiffs for their loss arising out of the Defendants' violation of MHPAEA." (Am. Compl. ¶ 97.) This confirms that Plaintiffs improperly attempt to characterize an individualized monetary claim for benefits as an equitable claim under § 1132(a)(3).

In situations such as this, courts dismiss ERISA breach of fiduciary duty claims. *See David B. v. Blue Cross Blue Shield of N.C.,* No. 1:24CV896, 2025 WL 2784309, at *10-11 (M.D.N.C. Sept. 30, 2025); *T.S. v. Anthem Blue Cross Blue, Shield*, No. 1:23-CV-60-MOC, 2023 WL 5004499, at *3 (W.D.N.C. Aug. 4, 2023); *L.L. v. Medcost Benefit Servs.*, No. 1:21-CV-00265-MR, 2023 WL 362391, at *5 (W.D.N.C. Jan. 23, 2023). In *R.P. & M.P. v. BlueCross BlueShield of N.C.*, the court reviewed a similar ERISA breach of fiduciary duty claim premised on an alleged Parity Act violation, dismissed it, and held:

> The only harm that flowed from the alleged breach of fiduciary duty was the denial of benefits. Because [Section] 1132(a)(1)(B) remedied the denial of benefits, the alleged breach of fiduciary duty is adequately remedied without invoking [Section] 1132(a)(3). Indeed, if the [c]ourt followed [the] plaintiffs' logic, any beneficiary claiming a wrongful denial of benefits could 'repackage' her claim as a breach of fiduciary duty.

No. 5:22-CV-295-BO-RJ, 2023 WL 4242746, at *2 (E.D.N.C. June 28, 2023). So too, here. Plaintiffs' ERISA breach of fiduciary duty claim in the second cause of action premised on an alleged Parity Act violation is simply a repackaged claim for benefits. ERISA does not permit such claims, warranting dismissal.

14

### 2. Plaintiffs Fail to Plausibly Allege a Parity Act Violation.

The Court separately should dismiss Plaintiffs' Parity Act claims because Plaintiffs fail to plausibly allege any underlying statutory violation. The Parity Act, which regulates health benefit plans that provide coverage for mental health services, requires that treatment limitations applicable to mental health be "no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan[.]" 29 U.S.C. § 1185a(3)(A)(ii). Treatment limitations can be quantitative (*e.g.*, limits on the number of visits) or nonquantitative ("NQTLs"), which "limit the scope or duration of benefits for treatment," and include "[r]estrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for services provided under the plan or coverage." 29 C.F.R. § 2590.712(a)-(c). NQTL comparisons between mental health and medical/surgical benefits are to be made within benefit classifications. 29 C.F.R. § 2590.712(c)(2)(ii)(A) ("To the extent that a plan . . . provides benefits in a classification and imposes any . . . treatment limitation . . . for benefits in the classification, the rules of this paragraph (c) apply separately with respect to that classification for all . . . treatment limitations . . .").

An NQTL complies with the Parity Act if the "processes, strategies, evidentiary standards, or other factors used in designing and applying the non[-]quantitative treatment limitation to mental health or substance use disorder benefits in the classification are *comparable to, and are applied no more stringently than*, the processes, strategies, evidentiary standards, or other factors used in designing and applying the limitation with respect to medical/surgical benefits in the classification." 45 C.F.R. § 146.136(c)(4)(i) (emphasis added); *James C. v. Anthem Blue Cross & Blue Shield*, No. 19-38, 2021 WL 2532905, at *19-20 (D. Utah June 21, 2021) (holding that courts must consider the plan as a whole when assessing Parity Act claims, not just differences in

definitions and that plan complied with Parity Act because its "definitions and guidelines [we]re comparable" despite not being identical). And the NQTL rules are intentionally flexible in their application. *See* 78 Fed. Reg. 68245.

For there to be a violation of the NQTL rules, plaintiffs must make a facial or as-applied challenge. In a facial challenge, a plaintiff must demonstrate that the operative health benefits plan fails to use comparable "processes, strategies, evidentiary standards, or other factors" in developing and applying the NQTLs for mental health and/or medical/surgical benefits in the classification. 45 C.F.R. § 146.136(c)(4)(i); *Michael M. v. Nexsen Pruet Grp. Med. & Dental Plan*, No. 3:18-cv-00873, 2021 WL 1026383, at *10-11 (D.S.C. Mar. 17, 2021). In an as-applied challenge, a plaintiff must demonstrate that the operative health benefits plan applies the "processes, strategies, evidentiary standards, or other factors" in a more stringent manner to the at-issue mental health benefits. *Id.*

In stating a claim for either type of violation, plaintiffs must still conform to general pleading standards and cannot rely on implausible or conclusory allegations. *See Mark C. v. United Healthcare Ins. Co.*, No. 2:20-cv-00012-DBB, 2021 WL 288578, at *3 (D. Utah Jan. 28, 2021) (dismissing claim premised on an alleged Parity Act violation noting that "[c]onclusory statements and legal conclusions 'couched as a factual allegation' need not be accepted as true in the context of a motion to dismiss and are insufficient to carry a plaintiff's Rule 8 burden."); *Kirsten W. v. Cal. Physicians' Serv.*, No. 2:19-cv-00710-DBB-JCB, 2021 WL 83264, at *3 (D. Utah Jan. 11, 2021) (same). To state a claim under the Parity Act, a plaintiff must "(1) identify what unequal limitation allegedly violated the Parity Act; (2) identify medical or surgical analogues to the mental health treatment at issue; and (3) compare this limitation as it relates to [plaintiff's] mental health treatment with medical or surgical analogues to show a plausible disparity." *B.H. v. Anthem Health*

*Plans of Va., Inc.*, No. 3:22-CV-00600-RCY, 2023 WL 5270658, at *7 (E.D. Va. July 27, 2023). A plaintiff must allege facts—not conclusions—to properly plead a claim. *See ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211–12 (4th Cir. 2019).

Here, Plaintiffs argue United "impos[ed] restrictions based on location, facility type, or provider specialty which resulted in a restriction of coverage for the service largely because it took place outdoors." (Am. Compl. ¶ 31.) Next, Plaintiffs identify three allegedly analogous medical/surgical analogues: skilled nursing facilities, inpatient hospice care, and rehabilitation facilities. (*Id.* ¶ 85.) Plaintiffs allege a disparity exists because the "Plan denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid." (*Id.* ¶ 87.) Plaintiffs' ERISA claim premised on a Parity Act violation must be dismissed because it fails to plausibly allege a disparity exists. While Plaintiffs point to alleged violations of the Parity Act, they fail to identify specific, unequal limitations nor do Plaintiffs compare any alleged violations or limitations to the identified analogues to show a plausible disparity in treatment.

Courts have dismissed such claims for the same pleading deficiencies that plague Plaintiffs' First Amended Complaint. *See Albert S. v. Blue Cross & Blue Shield of N.C.*, No. 1:22-cv-235-MOC-WCM, 2023 WL 3111768, at *4 (W.D.N.C. Apr. 26, 2023) ("Plaintiffs have alleged three separate treatment limitations that violate the Parity Act. But, Plaintiffs' complaint does not state sufficient facts to support these allegations, and therefore Plaintiffs have failed to allege facts sufficient to support their Parity Act claim."); *Michele T. v. United Healthcare Oxford*, No. 2:19-cv-507-TC, 2020 WL 4596961, at *5 (D. Utah Aug. 11, 2020) (rejecting complaint that failed to plead "how [the administrator] handles medical and surgical claims," and holding that plaintiffs

17

cannot "simply allege summarily that it treats the two types of claims differently"). Plaintiffs' conclusory allegations fall well short of Fed. R. Civ. P. 8 pleading requirements.

Moreover, Plaintiffs' allegations of disparate treatment are contradicted by Plan terms. Indeed, the Plan's list of excluded Alternative Treatments is not limited to mental health services. (Balog Decl., Ex. A, p. 59, Ex. B, p. 57.) Here, the "processes, strategies, evidentiary standards, and other factors" used to apply treatment limitations to mental health benefits are comparable to those used for analogous medical/surgical benefits. 29 C.F.R. § 2590.712(c)(4)(i). The Plan requires that all "Covered Services" be "Medically Necessary." (Balog Decl., Ex. A, pp. 103-104, Ex. B, p. 102-103.) Without a plausible allegation that the services in question were in fact "Medically Necessary" and "Covered Health Care Services," Plaintiffs cannot plausibly allege a disparity between mental health coverage on the one hand and medical/surgical coverage on the other. Accordingly, Plaintiffs fail to plausibly allege disparate standards.

In *William D. v. United HealthCare Ins. Co.*, No. 2:19-cv-00590-DBB-JCB, 2020 WL 4747765, at *4 (D. Utah Aug. 17, 2020), the court dismissed a Parity Act claim where the plaintiffs offered only "general assertions" of differential treatment "without any details whatsoever" of how comparator medical claims were treated. Plaintiffs similarly offer no such comparator allegations here. They cannot plausibly show that benefit outcomes would have differed had they sought out-of-network, *inpatient* medical/surgical services under the Plan.

### 3. Plaintiffs' Compliance Analysis Allegations are Inapplicable.

Plaintiffs allege that Defendants violated the Parity Act by failing to provide them with a compliance analysis or information about such analysis. (Am. Compl. ¶ 96.) Plaintiffs' allegations overlook that, at the time of their request, Defendants were not obligated to provide a copy of the analysis to Plaintiffs. Although the requirement to *perform* such an analysis took effect in 2021, the statute, "§ 1185a(a)(8)(A)[,] only require[d] that the comparative analyses … be made available

to the Secretary of Labor, not an ERISA-plan participant or beneficiary." *Duncan v. Jack Henry & Assocs., Inc.*, 617 F. Supp. 3d 1011, 1045-46 (W.D. Mo. 2022) (citing Pub. L. 116–260, 134 Stat. 1182 and holding that statute did not require production of analysis to plan participants). Though the Department of Labor subsequently promulgated a regulation requiring production to participants, 29 C.F.R. § 2590.712-1(e), that regulation only took effect in November 2024 (60 days after its publication in the Federal Register). *See* Requirements Related to the Mental Health Parity and Addiction Equity Act, 89 Fed. Reg. 77586-01 (Sept. 23, 2024).

Plaintiffs' allegations cannot convert the comparative analysis into an "instrument[] under which the plan is operated," nor do they create any duty to provide the analysis to participants before the November 2024 effective date of 29 C.F.R. § 2590.712-1(e). *Id.* That regulation, which for the first time required production of the comparative analysis to participants upon request, did not apply at the time of Plaintiffs' request.

Even now, the Department of Labor's implementing regulation—which became effective only in November 2024—does not retroactively impose a disclosure obligation for requests made before that date. The First Amended Complaint does not allege that Plaintiffs made any request after that regulation became effective. Their request therefore cannot support a Parity Act claim. Plaintiffs also do not allege, nor could they allege, that the comparative analysis constituted a governing plan document, an "instrument under which the plan was operated," or a document required to be furnished under ERISA § 104(b). Courts have rejected such attempts. *See Duncan,* 617 F. Supp. 3d at 1050 (comparative analysis not a plan document or "other instrument"). The

First Amended Complaint fails to plausibly transform Plaintiffs' disclosure complaints into a statutory violation.[3]

>  ### iii. The Court Should Exercise Its Discretion To Deny Plaintiffs' Third Cause Of Action For Statutory Penalties.

ERISA Section 1132(c) imposes liability on "[a]ny administrator … who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary." 29 U.S.C. § 1132(c). ERISA defines "administrator" as "(i) the person specifically so designated by the terms of the instrument under which the plan is operated; [or] (ii) if an administrator is not so designated, the plan sponsor." 29 U.S.C. § 1002(16)(A). "Under the plain language of ERISA, civil penalties [under § 1132(c)] can only be imposed upon the plan administrator." *Flores v. Life Ins. Co. of N. Am.*, 770 F. Supp. 2d 768, 773 (D. Md. 2011); *see also N.E. v. Blue Cross Blue Shield of N.C.*, No. 1:21CV684, 2023 WL 2696834, at \*14 (M.D.N.C. Feb. 24, 2023) (holding that a claim for statutory penalties under § 1132(c) "must be asserted against the Plan Administrator"), *report and recommendation adopted*, 2023 WL 2692414 (M.D.N.C. Mar. 29, 2023).

Here, Coca-Cola is the "Plan Sponsor" and United HealthCare Services, Inc. is the "Claims Administrator." (Balog Decl., Ex. A, p. 1, Ex. B, p. 1.) As alleged, Plaintiffs did not request documents from Coca-Cola, the Plan Sponsor, until February 19, 2025, (Am. Compl. ¶ 64), *and even then there is no proof that it was received by Coca-Cola*. The Plan explains that "Plan Sponsor" means "the employer, or other defined or otherwise legally established group, to whom

---

[3] Defendants do not concede that the regulation is valid but need not address this point in light of the regulation's inapplicability. Similarly, Plaintiffs do not allege that the comparative analysis is an instrument under which the Plan was operated. *See Duncan*, 617 F. Supp. 3d at 1050 ("Plaintiff's amended complaint includes no allegations of fact that suggest the comparative analyses she requested" were governing plan documents or "other instruments" under which the plan operated).

the Plan is issued." (Balog Decl., Ex. A, p. 111, Ex. B, p. 110.) Notably, a Plan Administrator cannot be liable for penalties until there has been a written request for documents. 29 U.S.C. § 1024(b)(4); *Hiney Printing Co. v. Brantner*, 243 F.3d 956, 960-61 (6th Cir. 2001) (holding that a plan administrator cannot be liable for "information requests directed to someone other than the administrator").

The list of documents that a plan administrator must furnish to a participant or beneficiary upon written request is set forth in 29 U.S.C. § 1024(b)(4). These documents include a "copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is ... operated." *Id.*

To determine the amount of statutory penalties, courts consider the "totality of the circumstances." *See McDonough v. Aetna Life Ins. Co.*, 783 F.3d 374, 382-383 (1st Cir. 2015). This includes whether the belated disclosure was in bad faith, whether the belated disclosure caused harm to the opposing party and the nature and extent of that harm. *Id.* Courts can decline to impose any monetary penalty for late disclosures of plan documents absent a showing of either bad faith or prejudice. *See Kerkhof v. MCI WorldCom, Inc.*, 282 F.3d 44, 56 (1st Cir. 2002) ("…as a matter of law: although the district court need not find bad faith or prejudice to impose penalties, it may give weight—even dispositive weight—to these factors in the exercise of its discretion."). Here, Plaintiffs fail to plausibly allege how any alleged lack of response from the Plan Administrator was intentional or harmed them in any way. As a result, the Court should exercise its discretion to decline to award any monetary penalties.

21

### iv. Plaintiffs' Demand for Attorneys' Fees and Costs Should be Stricken or Dismissed.

In Plaintiffs' "Prayer for Relief," Plaintiffs demand attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(1). Attorneys' fees and costs can be awarded for claims brought under ERISA, but they are not separate rights as Plaintiffs appears to suggest: a request under § 1132(g)(1) exists only if Plaintiffs prevail on their ERISA cause of action. *See Williams v. Metropolitan Life Ins. Co.*, 609 F.3d 622, 626 (4th Cir. 2010) (holding that in an ERISA action, a district court may, in its discretion, award costs and reasonable attorneys' fees to either party under 29 U.S.C. § 1132(g)(1), so long as that party has achieved "'some degree of success on the merits.'"). Here, Plaintiffs do not have a separate basis to demand relief under ERISA § 1132(g)(1), and such a request should be stricken or dismissed.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' First Amended Complaint, with prejudice.

Date: June 5, 2026

Respectfully submitted by,

UNITEDHEALTHCARE SERVICES, INC., UNITED BEHAVIORAL HEALTH, COCA-COLA CONSOLIDATED, INC., and the COCA-COLA CONSOLIDATED, INC. WELFARE BENEFIT PLAN

*/s/ Victoria Street Tolbert*

Victoria Street Tolbert
North Carolina State Bar No. 32945
SEYFARTH SHAW LLP
300 South Tyron Street, Suite 400
Charlotte, North Carolina 28202
Telephone: (704) 925-6042
Facsimile: (704) 559-2457
E-mail: vtolbert@seyfarth.com

*Attorney for Defendants*

## WORD COUNT CERTIFICATION

I hereby certify that, pursuant to Local Rule 7.2 of the Local Civil Rules of the U.S. District Court for the Eastern District of North Carolina, this memorandum contains 7,231 words, inclusive of headings, footnotes, citations, and quotations in a memorandum and exclusive of case caption, signature block, any required certificates, table of contents, and table of authorities as counted by Microsoft Word.

/s/ Victoria S. Tolbert
Victoria S. Tolbert

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:26-CV-00003-M-RN**

MATT M. and R.M.,

       Plaintiffs,

   v.

UNITED HEALTHCARE SERVICES, INC.,
UNITED BEHAVIORAL HEALTH, COCA-
COLA CONSOLIDATED INC., and the
COCA-COLA CONSOLIDATED INC.
WELFARE BENEFIT PLAN,

       Defendants.

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 5, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

/s/ Victoria S. Tolbert

Victoria S. Tolbert
*Attorney for Defendants*